1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                     FOR THE DISTRICT OF OREGON

11  KEY BANK NATIONAL ASSOCIATION,)
                                  )
12              Plaintiff,         )
                                  )        No.  CV--07-1076-HU
13        v.                       )
                                  )
14  RONALD G. VAN NOY, et al.      )        FINDINGS & RECOMMENDATION
                                  )
15              Defendants.        )
    _____)

16

17  Rochelle L. Stanford
    PITE DUNCAN, LLP
18  525 E. Main Street
    P.O. Box 12289
19  El Cajon, California 92117

20        Attorneys for Plaintiff

21  Karin J. Immergut
    UNITED STATES ATTORNEY
22  District of Oregon

23  Adam F. Hulbig
    TRIAL ATTORNEY, TAX DIVISION
24  United States Department of Justice
    P.O. Box 683, Ben Franklin Station
25  Washington, D.C. 20044-0683

26        Attorneys for Defendant United States

27  / / /

28  / / /

1 - FINDINGS & RECOMMENDATION

Shannon Raye Martinez
SAALFELD GRIGGS PC
P.O. Box 470
250 Church Street SE, Suite 300

Salem, Oregon 97308

Attorney for Defendant American Tower, L.P.

HUBEL, Magistrate Judge:

Plaintiff Key Bank brings this action against defendants Ronald Van Noy, the United States[1], American Tower, L.P., and twelve other named defendants, as well as Does 1-20. Plaintiff, and several of the named defendants, are alleged to have an interest in real property located in Yamhill County.

The United States brought several cross-claims against various co-defendants. It also filed a third-party complaint against three third-party defendants who have some connection with the property, but were not named by plaintiff in the original complaint. Defendant American Tower also brought a cross-claim for indemnification against two co-defendants.

Presently, the United States moves for default judgment on its claims against certain named co-defendants. American Tower also moves for default judgment on its indemnification cross-claim.

I recommend that the motions be granted.

PROCEDURAL HISTORY

In its action, plaintiff seeks a judicial foreclosure of a deed of trust on certain Yamhill County real property ("the Newberg property."). Plaintiff contends that the deed of trust secures a

---

[1] Key Bank originally named the Internal Revenue Service (IRS) as the defendant, but the United States was later substituted for the IRS (dkt #8).

2 - FINDINGS & RECOMMENDATION

$500,000 line of credit with defendant Sammes Holding Company, C.L. Trust ("Sammes"), the purported owner of the Newberg property. Sammes allegedly defaulted under the terms of the credit agreement and this foreclosure action by plaintiff followed.

The United States was named as a defendant in the case brought by plaintiff because it has federal tax liens that attach to the Newberg property.  Following the filing of the cross-claims by the United States, Orders of Default were entered against the following cross-claim defendants:  Ronald Van Noy (dkt #78), Kent Van Noy (dkt #78), Sammes (dkt # 91), Walter Sanderson, Trustee of the Sanderson Living Trust dated October 20, 1987 (dkt #78), and Metropolitan Agencies (dkt #78).

Several other cross-claim defendants filed disclaimers of interest in the Newberg property:  Wells Fargo Nevada, N.A. (dkt #47), James Thomas (dkt #55), Stan Vendervelde (dkt #62), Commercial Recovery, Inc. (dkt #53), Oregon Department of Revenue (dkt #52), Robert Leeds (dkt #42), and Gene Stainbrook (dkt #79).[2]

Cross-claim defendants Earl Bishop and American Tower, L.P.,

---

[2]  The disclaimer of interest filed by the following cross-claim defendants specifically disclaims interest in the Newberg property as a cross-claim defendant:  Wells Fargo Nevada, Commercial Recovery, Inc., Oregon Department of Revenue, James Thomas, and Stan Vandervelde.

The disclaimer of interest filed by cross-claim defendants Robert Leeds and Gene Stainbrook refers only to the claims brought by plaintiff.  However, these disclaimers expressly disclaim any interest in the "real property described in the Complaint," and the allegations in support of the cross-claims identify the property at issue in those claims as the same property that is the subject of plaintiff's complaint.  Thus, I accept the disclaimers of interest by Leeds and Stainbrook as disclaimers of interest in the property which is at issue in the cross-claims.

1    filed Answers to the cross-claims.

2         Following the filing of the United States's third-party
3    complaint, Orders of Default were entered against third-party
4    defendants Dennis D'Annunzio (dkt #49), Sue Ann D'Annunzio, fka Sue
5    Ann Van Noy (dkt #49), and Barklen, LLC (dkt #49).  Barklen, LLC
6    also filed a disclaimer of interest (dkt #51).

7         On July 28, 2008, the United States moved for default judgment
8    against (1) cross-claim defendants Ronald Van Noy, Sammes, Kent Van
9    Noy, Walter C. Sanderson, as trustee of the Sanderson Living Trust,
10   and Metropolitan Agencies; and (2) third-party defendants Dennis
11   and Sue D'Annunzio.  None of these defendants has responded to the
12   motion for default judgment.

13        Following the filing of the motions for default judgment,
14   plaintiff and the United States filed a stipulation of dismissal of
15   plaintiff's claim against the United States (dkt #105).   The
16   stipulation recites that plaintiff holds a deed of trust against
17   the Newberg property that was properly filed with the Yamhill
18   County Recorder's Office before the United States filed its
19   applicable federal tax liens in this case.  It also recognizes that
20   plaintiff has no interest in prosecuting its claims against the
21   United States apart from ensuring that the proceeds of any
22   foreclosure sale of the Newberg property are applied to satisfy its
23   superior deed of trust prior to any distribution on the federal tax
24   liens.

25        In the stipulation, the United States expressly recognizes
26   plaintiff's superior lien in the Newberg property and stipulates to
27   inclusion in its proposed order of sale, a provision that the sale
28   of the Newberg property shall be subject to plaintiff's superior

4 - FINDINGS & RECOMMENDATION

lien, and that the lien shall be satisfied from the net proceeds of the sale, after the costs of sale are paid, before any distribution to the United States or any other party to cover their liens or other ownership interest.

On March 28, 2008, American Tower filed an Answer to the Complaint and to the United States's Cross-Claim Complaint against it, and brought its own cross-claim for indemnification against cross-claim defendants Ronald Van Noy and Sammes. Orders of Default as to these cross-claim defendants were entered on June 9, 2008 (dkt #90).

FACTS

"[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) ("the general rule is that well-pled allegations in the complaint regarding liability are deemed true.").

I.  The Newberg property

The real property at issue is commonly referred to as 24705 N.E. Mountain Top, Newberg, Oregon 97312-6641. U.S. Cross-Compl. at ¶ 6; U.S. Third Party Compl. at ¶ 8. It bears the following legal description:

> THE WEST HALF OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER AND THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 31, TOWNSHIP 2 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN, YAMHILL COUNTY, OREGON.

Id. (incorporating by reference Compl. at ¶ 2).

On July 15, 1986, Ronald Van Noy and Sue Van Noy acquired

5 - FINDINGS & RECOMMENDATION

title to the Newberg property.  U.S. Cross-Compl. at ¶ 7; U.S.
Third Party Compl. at ¶ 9.  The deed was recorded on July 15, 1986.
Id.

On April 9, 1987, Ronald Van Noy and Port Services Company,
Inc., entered into a Ground Lease pursuant to which Port Services
leased a portion of the Newberg property for purposes of
constructing and operating a cell tower.  U.S. Cross-Compl. at ¶ 8;
U.S. Third-Party Compl. at ¶ 10.

On July 24, 1990, the Oregon Circuit Court for Multnomah
County entered a divorce decree between the Van Noys.  U.S. Cross-
Compl. at ¶ 9; U.S. Third-Party Compl. at ¶ 11.  Pursuant to the
divorce decree, the Newberg property was to be sold and the net
proceeds from the sale were to be split equally between the Van
Noys.  Id.  The Newberg property was not sold.  Id.

On March 15, 1993, Port Services assigned all of its rights,
title, and interest in the Ground Lease, to Northwest Antenna Site
Services, Inc., pursuant to a Lease Assignment.  U.S. Cross-Compl.
at ¶ 10; U.S. Third-Party Compl. at ¶ 12.

On March 7, 1997, the Van Noys (Sue D'Annunzio and Ronald Van
Noy) transferred the Newberg property via Bargain and Sale Deed,
for no consideration, to Sammes.  U.S. Cross-Compl. at ¶ 11; U.S.
Third-Party Compl. at ¶ 13.  The deed was recorded on March 20,
1997.  Id.  According to the deed, the purpose of the transfer was
"to change vesting."  Id.  Approximately one month earlier, on
February 3, 1997, Ronald Van Noy received an IRS notice of levy for
collection of his federal income tax liabilities for the 1995 tax
year.  Id.  The trustees of Sammes are Ronald Van Noy, his son Kent
Van Noy, and Earl Bishop.  Id.

On June 18, 1997, Sammes purported to convey an interest in the Newberg property to plaintiff via deed of trust in order to secure a $500,000 line of credit. U.S. Cross-Compl. at ¶ 12; U.S. Third-Party Compl. at ¶ 14. The deed of trust, which was recorded in the Yamhill County Recorder's Office on June 25, 1997, identifies Ronald Van Noy, Kent Van Noy, and Earl Bishop, as borrowers. Id.; see also Exh. A to Compl.

On October 11, 1999, Sammes purported to convey an interest in the Newberg property via trust deed to itself for its own benefit, and/or to Barklen in order to secure the payment of an alleged debt in the amount of $31,633, which was due and payable on November 15, 2000. U.S. Third-Party Compl. at ¶ 15. That deed was recorded on October 13, 1999. Id.

On October 18, 1999, an Assignment and Assumption of Leasehold Estate by and between Northwest Antenna and American Tower was recorded against the Newberg property in the Yamhill County Recorder's Office. U.S. Cross-Compl. at ¶ 13; U.S. Third-Party Compl. at ¶ 16. Under this lease assignment, Northwest Antenna assigned all of its rights, title, and interest in the Ground Lease to American Tower. Id. Attached to the recorded copy of this lease assignment was an agreement by and between plaintiff, Sammes, and American Tower wherein plaintiff subordinated its security interest in the deed of trust in favor of the Ground Lease. Id. Also attached was the lease assignment from Port Services to Northwest Antenna, and the original Ground Lease. U.S. Third-Party Compl. at ¶ 16.

/ / /

/ / /

7 - FINDINGS & RECOMMENDATION

II.   1995 Income Tax Assessments Against Ronald Van Noy & Recording of Federal Tax Liens as to Ronald Van Noy

On November 25, 1996, a duly authorized delegate of the Secretary of the Treasury made timely federal income tax assessments against Ronald Van Noy for the tax year 1995. U.S. Cross-Compl. at ¶ 14.   $292,468 was assessed for income tax, $15,687.90 for interest, $11,529.12 as a penalty for failure to pay the tax, and $152 for an estimated tax penalty.  Id.

On May 21, 2007, this Court entered final judgment in favor of the United States and against Ronald Van Noy, for these assessments.  Id. at ¶ 15; see United States v. Ronald G. Van Noy, No. CV-06-1641-ST (dkt #11).  Pursuant to this judgment, Ronald Van Noy is indebted to the United States for "unpaid federal income taxes (Form 1040), interest, and penalties for tax year 1995, in the amount of $621,013.01, calculated through April 15, 2007, plus interest pursuant to 26 U.S.C. § 6601, 6621, and 6622, and 28 U.S.C. § 1961(c) and other accruals as allowed by law until paid in full."  Id.

On August 13, 1997, the IRS filed a Notice of Federal Tax Lien in the Yamhill County Recorder's Office naming Ronald G. Van Noy as the taxpayer for federal income tax liabilities for the tax period ending December 31, 1995. U.S. Cross-Compl. at ¶ 16.  A Notice of Refiling for this federal tax lien was recorded in the Yamhill County Recorder's Office on December 26, 2006.  Id.

On October 1, 1999, the IRS filed a Notice of Federal Tax Lien in the Yamhill County Recorder's Office naming Sammes as the nominee of Ronald G. Van Noy for federal income tax liabilities for the tax period ending December 31, 1995. U.S. Cross-Compl. at ¶

17; U.S. Third-Party Compl. at ¶ 18. A Notice of Refiling for this federal tax lien was recorded in the Yamhill County Recorder's Office on December 26, 2006. Id.

On October 7, 1999, the IRS filed a second Notice of Federal Tax Lien in the Yamhill County Recorder's Office naming Sammes as the nominee of Ronald G. Van Noy for federal income tax liabilities for the tax period ending December 31, 1995. U.S. Cross-Compl. at ¶ 18; U.S. Third-Party Compl. at ¶ 19. A Notice of Refiling for this federal tax lien was recorded in the Yamhill County Recorder's Office on December 26, 2006. Id.

III. 1995 Income Tax Assessments Against Dennis & Sue D'Annunzio and Recording of Federal Tax Liens as to Dennis & Sue D'Annunzio

On December 2, 1996, a duly authorized delegate of the Secretary of Treasury made timely federal income tax assessments against Dennis and Sue D'Annunzio for the tax year 1995. U.S. Third-Party Compl. at ¶ 21. $665,512 was assessed for income taxes, $37,011.09 was assessed for interest, $26,321.28 was assessed as a penalty for failure to pay taxes, and $229 was assessed as an estimated tax penalty. Id.

Timely notice of and demand for payment of the assessments has been made upon Dennis and Sue D'Annunzio. Id. at ¶ 22. Despite notice and demand for payment of these assessments, Dennis and Sue D'Annunzio have neglected, refused, or failed to pay the assessments against them and, as of July 31, 2007, there remained due and owing to the United States on those assessments the total of $960,745.68, plus accrued interest, penalties, and other statutory additions as provided by law from July 31, 2007, less any payments and credits. Id. at ¶ 23.

9 - FINDINGS & RECOMMENDATION

1    On March 19, 1999, the IRS filed a Notice of Federal Tax Lien
2  in the Yamhill County Recorder's Office naming Dennis and Sue
3  D'Annunzio as the taxpayers for federal income tax liabilities for
4  the tax period ending December 31, 1995. Id. at ¶ 17.  A Notice of
5  Refiling for this federal tax lien was recorded in the Yamhill
6  County Recorder's Office on October 24, 2006.  Id.
7  IV. American Tower's Indemnification Claim

8    On or about April 9, 1987, Ronald Van Noy executed a Ground
9  Lease and easement upon a portion of the Newberg property, and in
10  favor of Port Services.  Am. Tower's Answer & Cross-Compl. at ¶ 11.
11  On or about March 15, 1993, Port Services assigned the Ground Lease
12  to Northwest Antenna Services which then assigned it to American
13  Tower on or about July 9, 1999.  Id. at ¶¶ 12, 13.

14    Under the terms of the Ground Lease, the landlord agreed to
15  indemnify, defend, and hold the tenant harmless from any and all
16  losses, damages, liability, costs, or expenses including, but not
17  limited to, the tenant's reasonable attorney's fees and costs,
18  arising or alleged to have arisen out of any acts or omissions of
19  the landlord.  Id. at ¶ 20.  Both plaintiff and the United States
20  allege claims against American Tower for foreclosure of the Newberg
21  property.  Compl. at ¶¶ 20-30; U.S. Cross-Compl. at ¶¶ 31-36; Am.
22  Tower's Answer & Cross-Compl. at ¶ 21.

23            DISCUSSION OF UNITED STATES'S MOTION

24    In the memorandum in support of its motion for default
25  judgment, the United States explains that ultimately, it intends to
26  seek an order foreclosing the federal tax liens attached to the
27  Newberg property and directing that the Newberg property be sold to
28  satisfy such liens.  At this point, however, and in order to

10 - FINDINGS & RECOMMENDATION

facilitate such relief, the United States moves pursuant to Federal Rule of Civil Procedure 55(b)(2), for default judgment against the non-appearing defendants as follows:

(1)   finding that Sammes is the nominee, alter-ego, and/or fraudulent transferee of Ronald Van Noy and Sue D'Annunzio, and thus finding that title to the Newberg property is properly vested in Ronald Van Noy and Sue D'Annunzio as co-tenants;

(2) finding that the United States has a valid federal tax lien for unpaid income tax assessments for tax year 1995 against all property and rights to property belonging to Ronald Van Noy, including but not limited to Ronald Van Noy's ownership interest in the Newberg property, and that such lien may be foreclosed in this proceeding;

(3) finding that the United States is entitled to final judgment against Sue and Dennis D'Annunzio for unpaid income tax assessments for tax year 1995 in the amount of $1,030,635.73, plus accrued, but unassessed interest, penalties, and other statutory additions as provided by law from August 1, 2008;

(4) finding that the United States has a valid federal tax lien for unpaid income tax assessments for tax year 1995 against all property and rights to property belonging to Sue and Dennis D'Annunzio, including but not limited to Sue D'Annunzio's ownership interest in the Newberg property, and that such lien may be foreclosed in this proceeding; and

(5) finding that the federal tax liens against Ronald Van Noy and Sue D'Annunzio for tax year 1995, respectively, have priority over all liens on or other interests in the Newberg property, with the exception of plaintiff.

11 - FINDINGS & RECOMMENDATION

I.  Default Judgment Standards

        After entry of a default, a court may grant a default judgment on the merits of the case.  See Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

        Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

II.  Possibility of Prejudice

        The United States will suffer prejudice if default judgment is not awarded.  In order for the United States to collect the federal tax assessments against Ronald Van Noy and the D'Annunzios for tax year 1995, the Newberg property must be sold and the proceeds distributed.  Currently, however, title to the Newberg property is clouded by the transfer of the title to Sammes in 1997, and the junior liens of Walter Sanderson and Metropolitan Agencies, Inc..

        In the absence of a default judgment that restores legal title to Ronald Van Noy and Sue D'Annunzio, and extinguishes the interests of Sammes, Walter Sanderson, and Metropolitan Agencies, the United States will be frustrated in its efforts to collect the federal tax liabilities at issue, which exceed $1 million.  Thus, without the default judgment presently sought by the United States,

1 the public treasury is prejudiced.

2 III.  Merits of Claims and Sufficiency of Complaint

3       A.   Sammes as Nominee, Alter-Ego, or Fraudulent Transferee

4       As noted above, the United States seeks a default judgment

5 finding Sammes to be the nominee, alter-ego, and/or fraudulent

6 transferee of Ronald Van Noy and Sue D'Annunzio, and finding

7 therefore, that title to the Newberg property is vested in Ronald

8 Van Noy and Sue D'Annunzio as co-tenants.[3]  Such relief is sought

9 by the United States as to Ronald Van Noy and Sammes in the United

10 States's first and second cross-claims, and as to Sue D'Annunzio in

11 the United States's second and third third-party claims.

12           1.   Nominee

13       State law controls the determination of whether an entity is

14 an alter ego or nominee.  The Colby B. Foundation v. United States,

15 No. CV-96-3073-CO, 1997 WL 1046002, at *20 (D. Or. Oct. 22, 1997)

16 (citing Morgan Overseas Bank, Ltd. v. United States, No. CV-84-797-

17 PA, 1986 WL 10102, at *10 (D. Or. June 17, 1986)), aff'd, 166 F.3d

18 1217 (9th Cir. 1999).  Although Oregon law recognizes the nominee

19 theory, it does not address the factors necessary to determine

20 whether an entity is the nominee of the taxpayer.  Id.  Thus, as in

21 Colby, the court looks to the nominee factors identified in Towe

22 Antique Ford v. IRS, 791 F. Supp. 1450, 1454 (D. Mon. 1992), aff'd,

23 999 F.2d 1387 (9th Cir. 1993).  Colby, 1997 WL 1046002, at *20; see

24 also United States v. Secapure, No. C 07-1050 THE, 2008 WL 820719,

25

26       [3] By operation of law, the divorce between Ronald Van Noy
   and Sue D'Annunzio converted the tenancy by the entirety into a
27 tenancy in common.  Sanderson v. Heffington, 92 Or. App. 145,
   148, 757 P.2d 866, 869 (1988); see also Schafer v. Schafer, 260
28 P. 206, 209, 122 Or. 620, 630 (1927).

13 - FINDINGS & RECOMMENDATION

1   at *7 (N. D. Cal. Mar. 26, 2008) (noting that courts throughout the
2   Ninth Circuit rely on the <u>Towe</u> factors to determine nominee
3   status).

4       The factors are:

5       1) Whether the nominee paid no consideration or inadequate
6   consideration;

7       2) Whether the property was placed in the name of the nominee
8   in anticipation of litigation or liabilities;

9       3) Whether there is a close relationship between the
10   transferor and the nominee;

11       4) Whether the parties to the transfer failed to record the
12   conveyance;

13       5) Whether the transferor retained possession; and

14       6) Whether the transferor continues to enjoy the benefits of
15   the transferred property.

16   <u>Towe</u>, 791 F. Supp. at 1454.

17       The facts, accepted as true as a result of the default order,
18   show that Sammes paid no consideration in connection with its
19   acquisition of the Newberg property from Ronald Van Noy and Sue
20   D'Annunzio. This is confirmed by the bargain and sale deed
21   attached as Exhibit G to the Declaration of Teresa Kelly submitted
22   in support of the United States's Motion for Default Judgment.

23       Ronald Van Noy and Sue D'Annunzio executed the bargain and
24   sale deed March 7, 1997, which was after Ronald Van Noy received a
25   notice of levy for collection of his federal income tax liabilities
26   for the 1995 tax year, and after more than $700,000 in taxes,
27   interest, and penalties had been assessed against Sue D'Annunzio
28   for the 1995 tax year.

14 - FINDINGS & RECOMMENDATION

1    Ronald Van Noy and his son Kent Van Noy were trustees of
2    Sammes, evidencing a close relationship between the parties to the
3    transfer of the Newberg property.

4    Ronald Van Noy and Sue D'Annunzio retained possession of the
5    Newberg property after the transfer to Sammes.  U.S. Cross Compl.
6    at ¶ 21; U.S. Third-Party Compl. at ¶ 26.  They have continued to
7    enjoy all the incidents and burdens of ownership.  Id.

8    Although the conveyance was recorded on March 20, 1997, the
9    facts satisfy the other elements necessary to conclude that Sammes
10   was a nominee for taxpayers Ronald Van Noy and Sue D'Annunzio.

11              2.  Fraudulent Transfer

12   Under Oregon's Uniform Fraudulent Transfer Act (UFTA), Oregon
13   Revised Statutes §§ (O.R.S.) 95.200 - 95.310, a transfer made by a
14   debtor is fraudulent to the creditor, whether the creditor's claim
15   arose before or after the transfer was made or the obligation was
16   incurred, (1) where it is made with the intent to "hinder, delay,
17   or defraud any creditor of the debtor[,]" O.R.S. 95.230(1)(a); or
18   (2) where it is made without receiving reasonably equivalent value
19   and the debtor was engaged or was about to engage in a transaction
20   for which the remaining assets of the debtor were unreasonably
21   small, or the debtor "[i]ntended to incur, or believed or
22   reasonably should have believed that the debtor would incur, debts
23   beyond the debtor's ability to pay as they become due."  O.R.S.
24   95.230(1)(b)(A) and (B).

25   Additionally, a transfer made by a debtor is fraudulent as to
26   a creditor whose claim arose before the transfer was made if "the
27   debtor made the transfer or incurred the obligation without
28   receiving a reasonably equivalent value in exchange for the

15 - FINDINGS & RECOMMENDATION

1   transfer or obligation and the debtor was insolvent at that time or

2   the debtor becomes insolvent as a result of the transfer or

3   obligation."  O.R.S. 95.240(1).

4       If a creditor prevails on a cause of action under the UFTA, it

5   may, among other relief, seek "[a]voidance of the transfer or

6   obligation to the extent necessary to satisfy the creditor's

7   claim."  O.R.S. 95.260(a).

8       By virtue of the default order, the United States's

9   allegations that the transfer of the Newberg property to Sammes by

10  Ronald Van Noy and Sue D'Annunzio was intended to hinder, delay, or

11  default the United States of present and future lawful taxes, are

12  taken as true.  See Derek Andrew, Inc. v. Poof Apparel Corp., 528

13  F.3d 696, 702 (9th Cir. 2008) (affirming district court's default

14  judgment awarding attorney's fees on a Lanham Act claim when

15  allegations that the defendant acted knowingly and with an intent

16  to injure were accepted as true as a result of default order).

17  U.S. Cross-Compl. at ¶ 26; U.S. Third-Party Compl. at ¶ 31.

18      Additionally, the transfer was made to Sammes without the

19  exchange of reasonably equivalent value and left Ronald Van Noy and

20  Sue D'Annunzio with remaining assets which were unreasonably small

21  or insufficient to pay their current and future debts, including

22  their lawful tax liabilities.  U.S. Cross-Compl. at ¶ 27; U.S.

23  Third-Party Compl. at ¶ 32.  The transfer was made without the

24  exchange of reasonably equivalent value and during a period when

25  Ronald Van Noy and Sue D'Annunzio, individually or jointly,

26  incurred, intended to incur, or believed or reasonably should have

27  believed that they would incur, debts beyond their ability to pay

28  as they became due.  U.S. Cross-Compl. at ¶ 28; U.S. Third Party

Compl. at ¶ 33.    Finally, the transfer of the Newberg property to Sammes was made without the exchange of reasonably equivalent value, rendering Ronald Van Noy and Sue D'Annunzio insolvent.    U.S. Cross-Compl. at ¶ 29; U.S. Third Party Compl. at ¶ 34.

Based on these facts, the United States has established that under O.R.S. 95.230(1)(a), 95.230(1)(b)(A) and (B), and O.R.S. 95.240, the Newberg property was fraudulently transferred by Ronald Van Noy and Sue D'Annunzio to Sammes.

B.    Reduction of 1995 Tax Assessments to Judgment

As noted above, the tax assessment as to Ronald Van Noy for tax year 1995, has already been reduced to judgment.    Presently, the United States seeks a default judgment against the D'Annunzios in which their 1995 income tax assessments are reduced to judgment. The United States seeks this relief in the first claim of its third-party complaint.

In addition to the allegations recited above regarding the tax assessments against the D'Annunzios, and the allegations that they have neglected, refused, or failed to pay the assessments despite proper notice and demand for payment, the United States submits the D'Annunzios' IRS Form 4340, or "Certificate of Assessments and Payments," which shows the dates and amounts of the relevant tax assessments against the D'Annunzios and any payments made.    Exh. C to Kelly Declr.

These forms are "routinely used to prove that [] assessment[s] ha[ve] in fact been made."    Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991); see also Hughes v. United States, 953 F.2d 531, 535 (9th Cir. 1992) ("Form 4340 is an official document which establishes that assessments were made[.]").

17 - FINDINGS & RECOMMENDATION

The United States has also provided the declaration of IRS Revenue Officer Teresa Kelly, who has been assigned to collect the D'Annunzios' outstanding tax liabilities.   Kelly Declr. at ¶ 2. Kelly states that the balance owed by the D'Annunzios for the tax period ending December 31, 1995, is $1,030,635.73, as of August 1, 2008.   Id. at ¶ 10.   Interest and other statutory additions provided by law continue to accrue with respect to the tax liabilities for this period.   Id.

"'If any person liable to pay any tax neglects or refuses to pay the same after demand,' a federal tax lien arises in the amount 'in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.'" Dunn & Black, P.S. v. United States, 492 F.3d 1084, 1092 n.10 (9th Cir. 2007) (quoting 26 U.S.C. § 6321).   Under 26 U.S.C. § 7403, the United States may file a civil action to enforce the lien and may "subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability."

Where a claim or interest of the United States therein is established, the court may decree a sale of such property, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.   28 U.S.C. § 7403.

Here, the facts established by operation of the default order, supplemented by the Kelly Declaration and its exhibits, support the United States's claim for relief against the D'Annunzios for the tax assessments at issue, and a default judgment against the D'Annunzios for such assessments in the amount of $1,030,635.73,

18 - FINDINGS & RECOMMENDATION

1  plus interest and other statutory additions as provided by law from
2  August 1, 2008, should be entered.

3      C.  Priority of Federal Tax Liens

4      As recited above, many of the cross-claim defendants in this
5  case have filed disclaimers of interest in the Newberg property.
6  Excluding Ronald Van Noy, Kent Van Noy, and Sammes, those who have
7  not  disclaimed  interest  are  Earl  Bishop,  Walter  Sanderson,
8  Metropolitan Agencies, and American Tower.    The United States
9  seeks this relief as part of its third cross-claim and fourth
10 third-party claim.

11     Orders of default have been entered as to Sanderson and
12 Metropolitan.    The United States contends that the liens against
13 the Newberg property held by Sanderson and Metropolitan Agencies
14 are junior to the lien held by the United States.

15     Sanderson has a judgment against Kent Van Noy that was
16 recorded against the Newberg property on December 15, 2003.  Exh.
17 1 to Hulbig Declr.  Metropolitan Agencies has a judgment against
18 Ronald Van Noy that was recorded against the Newberg property on
19 February 3, 2005.  Id.

20     26 U.S.C. § 6323(a) sets forth the priority of state liens and
21 interests as against federal tax liens:   "The lien imposed by
22 section 6321 shall not be valid as against any purchaser, holder of
23 a security interest, mechanic's lienor, or judgment lien creditor
24 until notice thereof which meets the requirements of subsection (f)
25 has been filed by the Secretary."   26 U.S.C. § 6323(a).   Thus,
26 although a federal tax lien attaches to the taxpayer's property at
27 the time the lien is assessed under section 6321, it is not valid
28 against a judgment lien creditor until the IRS files a notice of

19 - FINDINGS & RECOMMENDATION

1  tax lien.

2       As noted above, on August 13, 1997, the IRS filed a Notice of
3  Federal Tax Lien in the Yamhill County Recorder's Office naming
4  Ronald G. Van Noy as the taxpayer for federal income tax
5  liabilities for the tax period ending December 31, 1995. U.S.
6  Cross-Compl. at ¶ 16.  A Notice of Refiling for this federal tax
7  lien was recorded in the Yamhill County Recorder's Office on
8  December 26, 2006.  Id.

9       On October 1, 1999, the IRS filed a Notice of Federal Tax Lien
10 in the Yamhill County Recorder's Office naming Sammes as the
11 nominee of Ronald G. Van Noy for federal income tax liabilities for
12 the tax period ending December 31, 1995.  U.S. Cross-Compl. at ¶
13 17; U.S. Third-Party Compl. at ¶ 18.  A Notice of Refiling for this
14 federal tax lien was recorded in the Yamhill County Recorder's
15 Office on December 26, 2006.  Id.

16      On October 7, 1999, the IRS filed a second Notice of Federal
17 Tax Lien in the Yamhill County Recorder's Office naming Sammes as
18 the nominee of Ronald G. Van Noy for federal income tax liabilities
19 for the tax period ending December 31, 1995.  U.S. Cross-Compl. at
20 ¶ 18; U.S. Third-Party Compl. at ¶ 19.  A Notice of Refiling for
21 this federal tax lien was recorded in the Yamhill County Recorder's
22 Office on December 26, 2006.  Id.

23      On March 19, 1999, the IRS filed a Notice of Federal Tax Lien
24 in the Yamhill County Recorder's Office naming Dennis and Sue
25 D'Annunzio as the taxpayers for federal income tax liabilities for
26 the tax period ending December 31, 1999.  Id. at ¶ 17.  A Notice of
27 Refiling for this federal tax lien was recorded in the Yamhill
28 County Recorder's Office on October 24, 2006.  Id.

20 - FINDINGS & RECOMMENDATION

1    The United States perfected its tax liens against Ronald Van

2   Noy and the D'Annunzios in 1997 and 1999, well before the judgment

3   creditor liens of Sanderson and Metropolitan Agencies were recorded

4   against the Newberg property.  Thus, the liens possessed by these

5   two cross-claim defendants are subordinate to the United States's

6   federal tax liens against Ronald Van Noy and the D'Annunzios.

7    In its memorandum in support of its motion, the United States

8   notes that it has been involved in sporadic settlement discussions

9   with Bishop and American Tower, the only two cross-claim defendants

10  who filed an Answer to the United States's cross-claims.   United

11  States's Mem. at p. 20 n.13.  The United States indicates that it

12  expects to resolve its priority claim against these two cross-claim

13  defendants by stipulation.  However, as of the date of filing of

14  this Findings & Recommendation, the United States has filed no such

15  stipulation.

16    The United States also states that should the Court grant its

17  motion and enter default judgment against the non-appearing

18  defendants, the United States intends to move for an order of

19  judicial sale.  Id. at p. 20 n. 14.  The United States acknowledges

20  that it first must reach settlement of its claims against American

21  Tower and Bishop.  Id.

22    The wrinkle here is that the default judgment order sought by

23  the United States against the non-appearing defendants includes an

24  adjudication of all other liens or interests in the Newberg

25  property, and specifically, includes a judgment finding that the

26  federal tax liens against Ronald Van Noy and Sue D'Annunzio for tax

27  year 1995 have priority over all liens on or other interest in the

28  Newberg property, with the exception of Key Bank.  On this record,

21 - FINDINGS & RECOMMENDATION

1   the United States is entitled to a default judgment finding it to

2   have priority over Sanderson and Metropolitan Agencies. However,

3   without a stipulation resolving the interests of American Tower and

4   Bishop, the relief sought by the United States goes too far. The

5   facts demonstrate that the United States's tax lien has priority

6   over all liens on or other interests in the Newberg property, with

7   the exception of Key Bank, and with the caveat that the relative

8   priority of interests held by American Tower and Bishop vis a vis

9   the interest of the United States, is not yet ready for

10  determination in this case. Those issues must be resolved by

11  stipulation or by summary judgment before the entry of a default

12  judgment finding that Key Bank possessed the only interest with

13  priority to the interest of the United States.

14      I further note that in its proposed default judgment order,

15  the United States seeks, in addition to final judgments for the

16  unpaid tax assessments, an order finding that the United States's

17  valid tax liens may be foreclosed in this proceeding.

18      Generally, a foreclosure is a "legal proceeding to terminate

19  . . . [an] . . . interest in property, instituted . . . either to

20  gain title or to force a sale in order to satisfy the unpaid

21  debt[.]" Black's Law Dictionary 674 (8th ed. 2004). While the

22  United States indicates that it intends to seek the sale of the

23  Newberg property, it does not yet do so in this proposed order.

24  However, the status of this record does not support an order

25  "terminating the interest," whatever it may be, of American Tower

26  or Bishop at this time. An order allowing foreclosure of the tax

27  liens which, by definition, recognizes the termination of Ronald

28  Van Noy's and the D'Annunzios' rights in the Newberg property and

22 - FINDINGS & RECOMMENDATION

allows the United States to seek a sale of the property under 28 U.S.C. §§ 2001 and 2002, is not appropriate on this record but may be at a later date, after resolution of the issues surrounding the interest of American Tower and Bishop in the Newberg property. Likewise, it is inappropriate on this record to determine the relative priority of the government's lien and the interests of American Tower and Bishop and I decline to recommend that at this time.  The record does not support an order terminating the rights of Ronald Van Noy and the D'Annunzios in the Newberg property now.

IV.  Remaining <u>Eitel</u> Factors

        The <u>Eitel</u> factor regarding damages is inapplicable because the United States seeks no damages against the non-appearing defendants.  There is no dispute regarding the material facts of the case because, as noted above, the well-pleaded allegations in the cross-complaint and third-party complaint are taken as true as a result of the default order.  No facts or circumstances warrant an avoidance of default judgment based on excusable neglect.

        Although decisions on the merits are favored, the proposed sale of the Newberg property will be severely hampered if the title to the Newberg property is not reinstated in the names of Ronald Van Noy and Sue D'Annuzio pursuant to a judicial order, along with the recognition of the government's priority position in the Newberg property relative to the non-appearing defendants.

        Additionally, the preference for adjudication on the merits, "standing alone, is not dispositive." <u>Pepsico Inc. v. California Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (internal quotation omitted).  When defendants such as the Van Noys and the D'Annunzios fail to defend an action by submitting an answer, a

23 - FINDINGS & RECOMMENDATION

judgment on the merits is impractical.

Considering all of the Eitel factors, I recommend that the Court exercise its discretion in favor of granting the United States's motion for default judgment as requested, with the exception of a final adjudication of the relative priority of the liens held by the United States, Earl Bishop, and American Tower.

DISCUSSION OF AMERICAN TOWER'S MOTION

In its motion, American Tower states that it moves for default judgment against the defaulted cross-claim defendants Ronald Van Noy and Sammes, finding American Tower entitled to indemnification from these defendants pursuant to the agreement between American Tower and the defendants, and as a result, finding that American Tower is entitled to recover its attorney's fees and costs incurred in this action, jointly and severally, from defendants.

The same factors from Eitel are analyzed here in regard to American Tower's motion.

I.  Possibility of Prejudice

Without a default judgment, American Tower will be unable to protect its right to indemnification against Ronald Van Noy and Sammes.  Thus, it will be prejudiced.

II.  Merits of Claims and Sufficiency of Complaint

As with the claims brought by the United States, the well-pleaded facts alleged by American Tower in its cross-claims against Ronald Van Noy and Sammes, are accepted as true as a result of the defaults orders entered against these defendants.

Accordingly, American Tower establishes that Ronald Van Noy executed a Ground Lease in favor of Port Services Company, a predecessor in interest to American Tower, on or about April 9,

24 - FINDINGS & RECOMMENDATION

1987, and upon the Newberg property. Am. Tower's Answer and Cross-Claim at ¶ 11; Exh. 1 to Am. Tower's Answer and Cross-Claim at pp. 10-21.    In that Ground Lease, the "Landlord," Ronald Van Noy, agreed to defend the "Tenant," at the time Port Services Company, against claims "arising or alleged to have arisen out of any act or omission of Landlord," and further agreed to "indemnify and hold free and harmless" the "Tenant" from

> any and all loss, damages, liability, costs or expenses
> (including, but not limited to, attorneys' fees,
> reasonable investigative and discovery costs and court
> costs) and all other sums which Tenant . . . may
> reasonably pay or become obligated to pay on account of
> any, all and every demand, claim, assertion of liability
> or action arising or alleged to have arisen out of any
> act or omission of Landlord[.]

Exh. 1 to Am. Tower's Answer and Cross-Claim at p. 15; Am. Tower's Answer and Cross-Claim at ¶ 20.

American Tower has also established that on or about March 15, 1993, the Ground Lease was assigned from Port Services to Northwest Antenna Site Services, Inc. pursuant to the terms of the Ground Lease. Am. Tower's Answer and Cross-Claim at ¶ 12; Exh. 1 to Am. Tower's Answer and Cross-Claim at p. 9. On or about July 9, 1999, the Ground Lease was assigned from Northwest Antenna to American Tower, pursuant to the terms of the Ground Lease. Am. Tower's Answer and Cross-Claim at ¶ 13; Exh. 1 to Am. Tower's Answer and Cross-Claim at p. 1-2.

Based on the allegations now accepted as true as a result of the default, American Tower establishes that during the period when Northwest Antenna was the tenant under the Ground Lease, Van Noy, the landlord under the Ground Lease, assigned his rights, title, and interest in the Newberg property to Sammes. Am. Tower's Answer

25 - FINDINGS & RECOMMENDATION

and Cross-Claim at ¶ 15.

In late April 1999, shortly before the assignment of the Ground Lease from Northwest Antenna to American Tower, American Tower, Sammes, and plaintiff, entered into a "Subordination, Nondisturbance, and Attornment Agreement" (hereinafter "the Subordination Agreement"). Am. Tower's Answer and Cross-Claim at ¶ 16; Exh. 1 to Am. Tower's Answer and Cross-Claim at pp. 6-8.[4]

There, plaintiff is identified as the Lender, following its 1997 extension of a credit line to Sammes secured by a deed of trust on the Newberg property. Exh. 1 to Am. Tower's Answer and Cross-Claims at p. 6. Notably, Sammes is identified as the Landlord, and American Tower is identified as the Tenant. <u>Id.</u> Also notable is the recitation in the Subordination Agreement that Van Noy had assigned all of its right, title, and interest in and to the property to Sammes. <u>Id.</u> Thus, while the record assembled by the United States indicates that Ronald Van Noy conveyed the Newberg property via bargain and sale deed, the record in support of American Tower's indemnification claim indicates that Ronald Van Noy assigned his interest in the Newberg property to Sammes.

This Subordination Agreement was recorded in Yamhill County on October 18, 1999. Am. Tower's Answer and Cross-Claims at ¶ 16.

---

[4]  I note that the copy of the Subordination Agreement appended as part of Exhibit 1 to American Tower's Answer and Cross-Claim, contains the signature of Key Bank's representative but lacks the signatures of representatives from Sammes or American Tower. Exh. 1 to Am. Tower's Answer and Cross-Claim at p. 8. However, based on the default, I accept as true the allegations made by American Tower that Key Bank, Sammes, and American Tower actually entered into this agreement and that the agreement was subsequently recorded in Yamhill County.

1  All terms of the Ground Lease were incorporated by reference into

2  the Subordination Agreement. Id.; Exh. 1 to Am. Tower's Answer and

3  Cross-Claim at p. 6.

4      Generally, a contractual duty to defend is triggered when the

5  facts alleged in the pleading fall within the terms of the

6  contract. See Konell Constr. & Demolition Corp. v. Valiant Ins.

7  Co., No. CV-03-412-MO, 2006 WL 1360956, at *6 (D. Or. May 15, 2006)

8  (discussing insurer's duty to defend). A duty to indemnify exists

9  where the facts actually established trigger the indemnification

10 provision under the contract's terms. Id. (discussing insurer's

11 duty to indemnify).

12     Here, in the Complaint, plaintiff seeks the foreclosure of the

13 Newberg property as a result of the default under the deed of

14 trust, which was executed in favor of plaintiff by Sammes.

15 Plaintiff named American Tower as a defendant because it knew that

16 American Tower might claim an interest in the Newberg property.

17 Compl. at ¶ 14. The United States brought a cross-claim against

18 American Tower because of American Tower's interest in the Newberg

19 property. Under the indemnification provision of the Ground Lease,

20 the Landlord has a duty to indemnify American Tower for its

21 attorney's fees, reasonable investigative and discovery costs, and

22 court costs because American Tower incurred such fees and costs on

23 account of an action arising out of an act or omission of the

24 Landlord in regard to the Newberg property, namely the failure to

25 pay plaintiff or the United States.

26     American Tower seeks default judgment against both Ronald Van

27 Noy and Sammes. It contends that Ronald Van Noy's obligations

28 arise pursuant to the terms of the original Ground Lease and that

27 - FINDINGS & RECOMMENDATION

Sammes's obligations arise pursuant to the terms of the Subordination Agreement which (1) names Sammes as the Landlord and assignee of Ronald Van Noy, and (2) incorporates the provisions of the Ground Lease.  I agree with American Tower that default judgment against both of these defendants is appropriate.

Ronald Van Noy was identified as the Landlord in the Ground Lease.  Under that contract, Ronald Van Noy had the duty to defend and indemnify according to the contractual provision quoted above.  As explained above, Van Noy assigned his rights and interest in the Newberg property to Sammes.

Generally, however, an assignment of rights will not discharge the duties of the assignor if the assignee does not perform those obligations.  See Restatement (Second) of Contracts § 318(3) ("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by a person delegated discharges any duty or liability of the delegating obligor"); see also Restatement (Second) of Contracts § 318, cmt d ("An obligor is discharged by the substitution of a new obligor only if the contract so provides or if the obligee makes a binding manifestation of assent, forming a novation."); see also Eagle Indus., Inc. v. Thompson, 321 Or. 398, 412-13, 900 P.2d 475, 483 (1995) (when party to original agreement assented to substitution of obligors, the prior contract was superseded and original obligation discharged).  Here, nothing in the purported assignment of the Newberg property from Ronald Van Noy to Sammes, or in the Subordination Agreement, reveals a discharge of Ronald Van Noy's original indemnification obligation or a novation. American Tower is entitled to default judgment against both Ronald

28 - FINDINGS & RECOMMENDATION

1  Van Noy and Sammes.

2  III.    Remaining <u>Eitel</u> Factors

3      The sum of money at stake in the indemnification claim is
4  unknown at this time.    But, any fees and costs sought must
5  nonetheless be reasonable and will be reviewed by the Court under
6  the procedures established by Federal Rule of Civil Procedure
7  54(d)(2) and Local Rule 54.3.    There is no dispute regarding the
8  material facts of the case because, as noted above, the well-
9  pleaded allegations in the cross-complaint are taken as true as a
10  result of the default order.    No facts or circumstances warrant an
11  avoidance of default judgment based on excusable neglect.

12      I recommend that American Tower's motion for default judgment
13  be granted.

14                            CONCLUSION

15      I recommend that the United States's motion for default
16  judgment (#94) be granted as follows:

17      The United States is entitled to a Judgment finding that

18      (1) Sammes is the nominee and fraudulent transferee of Ronald
19  Van Noy and Sue D'Annunzio and title to the Newberg property is
20  properly vested in Ronald Van Noy and Sue D'Annunzio as co-tenants;

21      (2) the United States has a valid federal tax lien for unpaid
22  income tax assessments for tax year 1995 against all property and
23  rights to property belonging to Ronald Van Noy, including, but not
24  limited to Ronald Van Noy's ownership interest in the Newberg
25  property, and that such lien may be foreclosed against Ronald Van
26  Noy and all other interests except Key Bank, American Tower, and
27  Bishop, in this proceeding;

28      (3) the United States is entitled to final judgment against

29 - FINDINGS & RECOMMENDATION

1  Sue and Dennis D'Annunzio for unpaid income tax assessments for tax
2  year 1995, in the amount of $1,030,635.73, plus accrued, but
3  unassessed interest, penalties, and other statutory additions as
4  provided by law from August 1, 2008;

5     (4) the United States has a valid federal tax lien for unpaid
6  income tax assessments for tax year 1995 against all property and
7  rights to property belonging to Sue and Dennis D'Annunzio,
8  including, but not limited to Sue D'Annunzio's ownership interest
9  in the Newberg property and that such lien may be foreclosed
10 against the D'Annunzios and all other interests except Key Bank,
11 American Tower, and Bishop, in this proceeding; and

12     (5) the federal tax liens against Ronald Van Noy and Sue
13 D'Annunzio for tax year 1995, respectively, have priority over all
14 liens on or other interests in the Newberg property with the
15 exception of Key Bank, American Tower, and Bishop.

16    I further recommend that American Tower's motion for default
17 judgment (#99) be granted as follows:  American Tower is entitled
18 to indemnification from Ronald Van Noy and Sammes in this action
19 pursuant to the Ground Lease and the Subordination Agreement, and
20 as a result of such indemnification, American Tower is entitled to
21 recover its attorney's fees and costs incurred in defending this
22 action, jointly and severally, from defendants Ronald Van Noy and
23 Sammes, with the amount of fees and costs to be determined by
24 subsequent motion in accordance with Federal Rule of Civil
25 Procedure 54 and Local Rule 54.3.

26                          SCHEDULING ORDER

27    The above Findings and Recommendation will be referred to a
28 United States District Judge for review.  Objections, if any, are
30 - FINDINGS & RECOMMENDATION

1  due October 14, 2008.  If no objections are filed, review of the

2  Findings and Recommendation will go under advisement on that date.

3      If objections are filed, a response to the objections is due

4  October 28, 2008, and the review of the Findings and Recommendation

5  will go under advisement on that date.

6      IT IS SO ORDERED.

7                    Dated this  29th   day of  September   , 2008.

8

9

10                                   /s/ Dennis James Hubel
                                    Dennis James Hubel
11                                  United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31 - FINDINGS & RECOMMENDATION